No. 31.—JOSEPH ATTAWAY, guardian, &c. plaintiff in error, *vs.* NICHOLAS DYER, defendant in *fi. fa.* and B. H. CONYERS and J. C. PERKINS, claimants and defendants in error.

[1.] The privilege allowed to claimants, by the Act of 1821, of *capriciously* withdrawing claims *once*, must be exercised before a verdict has been rendered for damages against them, in favor of plaintiffs in execution—it cannot be done afterwards, so as to take *the case out of Court*, notwithstanding an appeal has been entered.

[2.] The question discussed, Whether, under our Statute, where the defendant, upon a plea of set-off, recovers a balance against the plaintiff, the plaintiff has a right, on the appeal, to dismiss his action so as to defeat the judgment?

Claim on appeal, from Coweta. Decision by Judge HILL, at September Term, 1849.

In this case there had been a claim of the land levied on, and a damage bond given. On a Jury trial, September, 1848, they found the property subject, and, also, 50 per cent. damages for claiming for delay. Claimant appealed, and after the parties announced ready for trial, at September Term, 1849, the claimant moved to withdraw his claim—not having withdrawn it before—which was allowed by the Court—the plaintiff objecting. Plaintiff then moved a judgment that the land be sold, and that the Clerk issue execution on the verdict for damages, which had

been rendered at September Term, 1848. This was refused as to the issuing a *fi. fa.* for the damages, but allowed the order that the levy proceed as to the land.

To which several rulings exception is taken, and the case brought up.

BURCH, for plaintiff in error, cited—

*Prince's Digest,* 426, 448.

STOKES, for defendant in error, cited—

*Campbell vs. Howard,* 5 *Mass. R.* 376. *Pennhallow vs. Doane,* 3 *Dallas,* 87, 119. *Keen vs. Turner,* 13 *Mass.* 266. *Yeaton vs. United States,* 5 *Cranch,* 281. *The Venus,* 1 *Wheat.* 113. *Carter and wife vs. Buchanan,* 2 *Kelly,* 337. *Payne vs. Cowden,* 17 *Pick.* 142. 20 *Pick.* 510.

*By the Court.*—LUMPKIN, J. delivering the opinion.

[1.] The preamble to the Act of 1821, (*Prince,* 448,) recites, that " Whereas, various constructions have been given in the different Courts of this State, as it regards claims of property, which tend to the manifest injury of the community, and frequently produced, *not only injustice to the plaintiffs in execution, but which tended evidently to oppress and harrass them by delays of justice—*

" Sec. 1. *Be it therefore enacted,* That when any Sheriff or Coroner shall levy an execution on property, claimed by any person not a party thereto, such person shall make oath to the same, and it shall be the duty of the officer to postpone the sale until the next term of the Court from whence said execution issued : *Provided,* said execution is levied on *personal* property ; but should it be levied on real estate, and claimed, then the report is to be made to the next term of the Superior Court of the County in which the land lies ; and the Court to which the claim is reported, shall cause the right of property to be decided on by a Jury at the *first* term, unless special cause be shown to continue the case for *one* term, and *no longer :  Provided,* also, the person claiming said property, his agent or attorney, shall give bond to the levying officer, with good and sufficient security, in a sum equal to double the amount of the

property levied on, at a reasonable valuation, to be judged of by the levying officer, conditioned to pay the plaintiff all damages, which the Jury, on the trial of the right of property, may assess against him, in case it should appear that said claim was made for the purposes of delay; and every Juror on the trial of such claim, shall be sworn, in addition to the oath usually administered, to give such damages, not less than ten per cent. as *may seem reasonable and just to the plaintiff* against the claimant, in case it shall be sufficiently shown that said claim was made for delay only; and it shall be lawful for such Jury to give verdict in manner aforesaid, by virtue whereof judgment may be entered up against such claimant and his security or securities, for the damages so assessed by the Jury, and the cost of the trial of the right of property: *and provided, also,* that the burden of proof shall lie upon the plaintiff in execution, in cases where the property levied on is, at the time of such levy, not in possession of the defendant in execution."

Sec. 2. "Whenever such claim of property may be made in terms of this Act, the person claiming property levied on and returned to the proper Court, by the levying officer, shall not be permitted to withdraw or discontinue his said claim, more than once, without consent and approbation of the plaintiff in execution, or some person duly authorized to represent such plaintiff; but said Court shall proceed to the trial of said claim of property, in manner aforesaid, and it shall be the duty of the Jury to award damages accordingly: that either party who may be dissatisfied with the verdict of said Jury, may enter his, her or their appeal to a Special Jury in the Superior Court, in the County where said trial may have been had; *which appeal shall be subject to the same rules and regulations which govern in appeals in ordinary cases.*"

The question for our consideration is, whether a claimant against whom, not only a verdict and judgment of condemnation, finding the property subject, has been rendered, but, also, damages have been assessed by the Jury for the injury done the plaintiff by the delay, can, under the provisions of the foregoing Act, *so* withdraw his claim, *capriciously* and without the consent of the opposite party, as to take the case out of Court, and thus defeat the rights of the plaintiff in the recovery?

Upon the most mature reflection, and careful examination of

Attaway *vs.* Dyer and others.

the Statute, we are constrained to put upon it a different construction from that which has usually obtained in the Circuit Courts of the State.

By reference to the preamble, we are enabled to ascertain, distinctly, the object of the Legislature in the enactment of this law. A practice had prevailed, as it regarded the claims of property, under the 33d section of the Judiciary Act of 1799, " which tended to the manifest injury of the community, and frequently produced, not only injustice to the plaintiffs in execution,. but which tended evidently to oppress and harrass them *by delays of justice.*"

This, then, was the mischief which the Assembly designed to provide against; for they say, "be it *therefore* enacted," &c. This Act, consequently, should be liberally construed for the benefit of judgment creditors. If we can so interpret it as to secure to claimants the privilege guaranteed to *them,* and at the same time maintain all the just rights of *plaintiffs in execution,* it is our duty to do so.

By attending strictly to the phraseology in the first part of the *second* section, it will obviously occur, I think, that the ceremony of withdrawing the claim is to *precede the trial.* After declaring that the claimant shall not withdraw or discontinue his claim, more than once, without the consent and approbation of the plaintiff in execution, it immediately adds: " *but said Court shall proceed to the trial,*" viz : as a thing subsequent in point of time. It then goes on to authorize an appeal, subjecting it to the same rules and regulations as govern in appeals in ordinary cases. We hear nothing farther, *after the trial,* of the claimant's right to withdraw—that had been previously adjusted. Well, one of the regulations which govern in appeals, in ordinary cases, is, "that no person shall be allowed to withdraw an appeal after it shall be entered, but by the consent of the opposite party." *Prince,* 426. It would seem, therefore, that so far from extending to claimants the right to withdraw the claim, on appeal, so as to defeat the judgment which had been rendered against them in favor of the plaintiff, that the Legislature had it in their mind to guard expressly against such a result.

So much for the mere verbal criticism upon the language of this law.

It may be argued, however, that notwithstanding the burthen

of proof lies on the plaintiff in execution, and that he is entitled to open and conclude the argument, that still the claimant sustains the relation of *plaintiff* in the cause; that he holds the *affirmative*; that he makes the issue, by coming in between the creditor and debtor, and swearing that the property levied on is his; that the proceeding, by claim, was given in the place of the remedy, by action, for damages against the officer selling the property of a third person. All this may be conceded. It may be yielded that our Claim Laws are *cumulative* only in their character; that they do not repeal the Common Law, in terms or by implication; that the owners of property, instead of interposing their claim, may still bring trespass, or trover, or ejectment, to try the rights of property; and that, in that event, they would, of course, occupy the *status* of plaintiffs in these several actions. It by no means follows, however, that where the owner elects to try the right of property, under our Claim Law, that the same legal attributes will appertain to his character.

But admit, as a general rule, that this position is true; that upon the trial of the claim, as in ordinary suits at Law, the *status* of the claimant is the same; and that after an appeal is entered, he is entitled to the same privileges of plaintiffs in such suits, (and surely he can ask no more,) does it follow, necessarily, that by *voluntarily* going out of Court, he can relieve himself of the verdict which has been assessed by the Jury against him, as a compensation to the plaintiff for the injury he has sustained? Has any plaintiff, in ordinary suits, such a privilege? We think not.

There is no doubt but that at Common Law, and usually in this State, the plaintiff may dismiss his suit whenever he choses. He is the only party seeking a remedy—he alone asks the aid and action of the Court. The defendant stands in the attitude of resistance. He opposes the suit of his adversary, and endeavors to defeat it. If the plaintiff sees fit to retire from the case and the Court, it is all the defendant can ask. He accomplishes pretty much all that he could attain at the end of the trial, and is relieved from the hazard and risk of the result.

[2.] But suppose, under our Law of Set-Off, a verdict and judgment are rendered for the defendant, for a balance against the plaintiff, can it be contended, for a moment, that the original plaintiff, by entering an appeal, could dismiss his suit and thus defeat the recovery?

The Judges in Convention, I have been informed, held otherwise; and the Supreme Court of Tennessee, in *Riley & White vs. Carter*, (3 *Humphreys' Rep.* 230,) ruled, under such circumstances, that the plaintiff had no right to dismiss his action without consent of the defendant; that the plea of set-off was in the nature of a cross-action, and that if the matter of set-off be larger than the plaintiff's demand, the defendant then stands in the attitude of the plaintiff, and has all the rights of the plaintiff; that however they may be named in the proceeding, the real *status* of the parties is changed; that the original defendant has become plaintiff, and the plaintiff defendant, to all intents and purposes; and that, thenceforth, the defendant, in ordinary cases, might just as well, and with as much reason, dismiss plaintiff's suit against him, as a plaintiff can do so in a case where the defendant has pleaded, *successfully,* a set-off larger than his demand. The party to whom the balance is due, has as much right to the decision of the issue in his favor, in the latter as in the former case; that at Common Law, the plea of set-off, although a cross-action, is purely defensive—all it aims at is to defeat the suit; that under the Statute authorizing a recovery for the balance which may be found due, it is still a cross-action, but with a view to a judgment against the other party; and that the plaintiff cannot, by dismissing his suit, escape from the issue which he has voluntarily made.

Placing *claimants,* then, in the same attitude of *plaintiffs,* in ordinary suits, to my mind the reasoning is conclusive, that when saddled with a judgment for damages, they cannot, of their own accord, throw it off by going out of Court. It is contrary to all the analogies of the law. Our conclusion, therefore, is, that the Legislature never intended to sanction such a practice.

Is it to be presumed, that they designed to permit a claimant to join issue with the plaintiff in execution, upon the trial of the right of property—take the chances of a verdict—and if found against him, resort to this mode of escape? Is it not to make a mockery of the Courts thus to consume the time of the country? It will be noticed, too, that the bond given by the claimant is peculiar. It does not indemnify the party against all damages which he may sustain on account of the claim being interposed, but such only *as the Jury may assess,* in case it should appear that the claim was made for delay only; so that, if the plaintiff is de-

prived of the compensation awarded to him, *by the Jury*, he is altogether remediless.   The words of the Statute would have to be exceedingly clear and explicit to justify a construction that would work such an evil.

Recollecting the familiar rule, that every Statute ought to be construed for the preventing of delay, as much as possible, (2 *Just.* 611, 614.   6 *Bac. Abr. tit. Statute, let. i,*) we hold, that the privilege allowed to claimants, by the Act of 1821, of *capriciously* withdrawing their claim *once,* must be exercised before a judgment has been rendered, assessing damages in favor of the plaintiff in execution, as a compensation for the injury he has suffered; that at any stage of the proceeding the claimant, like any other party, may cease to litigate his rights, by discontinuing his claim; *but that this does not withdraw the case from the Court;* that if an appeal has been entered, it may, like any other suit, be dismissed by the consent of parties; otherwise, if the claimant decline prosecuting his claim, the plaintiff in execution will proceed, *ex parte,* with his case, on the appeal trial—it being discretionary with the Special Jury, as in all other cases, to ratify the first verdict, or increase or reduce it, as to them shall seem just, upon all the facts and circumstances which shall be submitted in evidence.

The judgment, consequently, must be reversed, and the cause remanded, to take the direction herein indicated.